IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| JAKETRA BRYANT, on behalf of her minor child C.B. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| CALVARY CHRISTIAN SCHOOL OF COLUMBUS, GEORGIA, INC., | ) ) ) ) | |
| Defendant. | ) ) ) | JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff, Ms. Jaketra Bryant, (hereinafter "Ms. Bryant" or "Plaintiff") files this complaint against Defendant on behalf of her minor child, C.B. seeking redress of unlawful racial and disability-based discrimination pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. Section 1981, and 29 U.S. Code § 794.

## **INTRODUCTION**

C.B., a 13-year-old black boy, enrolled at Calvary School in 2019 as a sixth-grade student. Ms. Bryant specifically enrolled C.B., a student on the Autism

Spectrum, at Calvary School because of its' advertisement for "personalized attention for students with special needs."  Shortly after enrollment, however, C.B. was subjected to a series of racial and disability-based experiences from faculty and administration including: discriminatory discipline practices, an unwillingness to provide accommodations to C.B. for disability-based behaviors, repeatedly encouraging Ms. Bryant to medicate C.B. over requests for non-medical interventions, refusing the assistance of supportive therapies to assist teachers in executing C.B.'s accommodations, and forcing C.B. to remain with an instructor following complaints of discrimination. Ultimately, Defendant dismissed C.B. on or about March 2021 because of pervasive disability and racial discrimination.

In lieu of providing reasonable accommodations as required by Section 504 of the Rehabilitation Act, Calvary pushed C.B. out of the school for discriminatory reasons—prohibiting him from returning to school while requiring tuition payments in his absence. In addition to denying C.B. the benefit of education services paid for by Ms. Bryant, Defendant, by and through its Calvary teachers and administration, demonstrated lesser tolerance for black children by creating and enforcing a pattern of discriminatory treatment against black children. Namely, Calvary School punished similarly situated black students with harsher sanctions and penalties for similar offenses committed by white children—leading

2

to the dismissal or constructive dismissal of multiple black students in the 2019 and 2020 academic terms.

## PARTIES

1.

Ms. Bryant an adult African American woman and is the natural and biological mother of minor child, C.B.  At all times relevant to this action, Ms. Bryant, was and continues to be a resident of Columbus, Georgia.  Plaintiff submits to the jurisdiction of this Court.

2.

C.B. is a thirteen-year-old Black boy who was formerly enrolled as a student at Calvary C.B. School for the 2019-2020 academic year and the 2020-2021 academic year. At all times relevant to this action, C.B. was and continues to be a resident of Columbus, Georgia. He submits to the jurisdiction of this Court.

3.

Defendant Calvary Christian School of Columbus, Georgia, Inc., (hereinafter "Calvary School" or "Defendant") is now, and at all times relevant to this action, has been a private elementary school located 7556 Old Moon Rd,

Columbus, Georgia 31909. Calvary School is a ministry of Calvary Baptist

Church. Calvary School receives both state and federal funding for its operations.

## JURISDICTION AND VENUE

This action arises under laws of the United States, including Title VI of the

Civil Rights Act of 1964, as amended, 42 USC § 2000d, et. Seq, 42 U.S.C. § 1981,

and 29 U.S.C. 794. This Court has subject matter jurisdiction pursuant to 28 U.S.C.

§§ 1331 and 1343(a)(3) and (a)(4).

## RELEVANT FACTS

4.

In fall 2019, C.B. was enrolled at Calvary School as a sixth-grade student in the

Discovery School Program.

5.

Calvary School tuition and fees for the 2019-2020 academic year were $7,800.

6.

Calvary School tuition and fees for the 2020-2021 academic year were: $7,800.

7.

The Discovery School Program is a separate small-based instruction program

within Calvary School providing a 5 student:1 teacher ratio for an additional $500

per month.

8.

Ms. Bryant sought out and enrolled her son at Calvary hoping to take advantage of the "personalized attention for students with special needs" within the Discovery School Program advertised on the site.

9.

Jim Koan II is the Calvary School Headmaster.  As the Headmaster, Mr. Koan is the senior-most executive management official at the school.  Mr. Koan has supervisory and decision-making authority to create, enforce, and ratify the decisions of all Calvary School personnel.

10.

Pamela Jones is the Discovery School Director at Calvary School.  As the Director, Ms. Jones is the senior management official of the Discovery School program, a small-group based learning program.  Ms. Jones has supervisory and decision-making authority to create, enforce, and ratify the decisions made within the Discovery School.  Director Jones reports to Headmaster Koan.

11.

Kelly Cameron is a teacher within the Discovery School Program at Calvary School.  Ms. Cameron is one of five discovery schoolteachers, who teaches students enrolled in the Discovery School Program.  As a teacher, Ms. Cameron writes education plans, teaches students, and completes various administrative tasks as assigned.  Ms. Cameron reports to both Director Jones and Headmaster Koan.

12.

C.B. has been diagnosed with an Autism Spectrum Disorder (ASD F84.0 Level 3) and Attention Deficit Hyperactivity Disorder (ADHD). C.B.'s disabilities manifest in various ways including eloping, distracted or delayed concentration, and the need to utilize manipulatives to occupy his hands during instruction.

13.

Calvary School's 2020-2021 Student Handbook Calvary C.B. School, Expulsion/Dismissal Policy, requires that a student exhibit "persistent or significant discipline problems" to be eligible for expulsion or dismissal from the school.

14.

On or around August 2019, contemporaneous with enrollment, Ms. Bryant provided Defendant with notice of C.B.'s learning disabilities.

15.

In September 2019, C.B. closed the lid of his laptop hard because he was frustrated due to his ADHD.

16.

Ms. Bryant met with Calvary School to discuss reasonable accommodations and both parties agreed that C.B. would use a school-based computer with internet surfing restrictions to minimize distractions.

17.

The following day, C.B. receives good behavior marks from all his teachers on his behavior chart.

18.

On or around October 2019, Calvary School received notice of C.B.'s need for additional reasonable accommodations in the report from Dr. Weiss.

19.

As a child with disabilities on the autism spectrum, Ms. Bryant has been continuously involved with the education and development of C.B.

20.

Since C.B.'s enrollment, Ms. Bryant has witnessed the systemic displacement of young black boys at Calvary.

21.

A.B., a minor black boy enrolled at Calvary School for the 2020-2021 academic year, withdrew from the school after dealing with a racially discriminatory learning environment in Ms. Cameron's class.

22.

C.D., a minor black boy enrolled at Calvary School for the 2020-2021 academic year, withdrew from the school after dealing with a racially discriminatory learning environment in Ms. Cameron's class.

23.

Of the less than ten percent minority population, the 2-3 black students in C.B.'s class have chosen to enroll elsewhere—rather than deal with the intolerant racially discriminatory learning environment.

24.

In April 2020, Calvary School transitioned to virtual learning because of the novel COVID-19 pandemic.

25.

Ms. Bryant requested reasonable accommodations for C.B. in the virtual setting, but Calvary School refused her request, saying that virtual learning *is the parent's responsibility.* (emphasis added)

26.

Again, Calvary School denied C.B. reasonable accommodations for specific instruction-based learning.

27.

The transition to virtual instruction resulted in deficient and discriminatory instruction for C.B. Namely, C.B.'s educational schedule decreased from 8 hours per day to 1 hour per day.

28.

In May 2020, C.B. received the Faithful Effort award for improved academics and behavior from Calvary School.

29.

In the fall 2020 term, C.B. was subjected to a series of racial and disability-based experiences from faculty and administration.

30.

Ms. Bryant provided written and verbal notice of these issues to the administration multiple times; however, *no action* was taken to create a non-discriminatory environment.

31.

In October 2020, Ms. Bryant met with Director Jones to discuss concerns about racially discriminatory treatment of C.B. in Ms. Cameron's classroom—Ms. Bryant noted that Ms. Cameron was especially critical of C.B., disregarded his need for accommodations, and had little patience in her interactions with C.B.

32.

Defendant denied Ms. Bryant the opportunity to meet with Ms. Cameron.

33.

Defendant refused to investigate Ms. Bryant's allegations of racial discrimination.

34.

Instead of investigating Ms. Bryant's complaints of discrimination, Director Jones encouraged Ms. Bryant to medicate C.B.

35.

During this conversation, Ms. Bryant requests the opportunity to investigate the purported issues in Ms. Cameron's classroom—noting that C.B. does not have any complaints from his other teachers.

36.

Ms. Bryant declined the recommendation and explained her concern that Calvary School was resorting to medication-based interventions prematurely because of C.B.'s race and the teacher's cultural insensitivity.

37.

In October 2020, Ms. C.B. contacted Ready to Learn ABA, LLC to acquire their support in reducing the impact and symptomatology of ASD as a result of C.B.'s recent diagnosis of Autism Spectrum Disorder (ASD F84.0 Level 3) and Attention Deficit Hyperactivity Disorder (ADHD) and his change in academic setting from a face-to-face in school setting to the virtual format with Calvary School.

38.

Calvary School teachers repeatedly encouraged Ms. Bryant to medicate C.B.

39.

During the 2020 presidential election cycle, racially charged comments about "blacks" and "gays" are discussed in a derogatory manner amongst students at Calvary School.

40.

The racial comments affect the learning environment for C.B., including exacerbation of his learning disability manifestations.

41.

In November 2020, C.B. threw a calculator at the wall because of his disability.

42.

Despite knowledge of these issues, Calvary School fails to intervene in any meaningful way.  Instead, Calvary School disciplined C.B. with three days of out-of-school suspension.

43.

In his 1.5-year matriculation at Calvary, C.B. had 4 incidents of misbehavior related to his disability.

44.

In his 1.5-year matriculation at Calvary, C.B. never harmed or attempted to harm any peers or faculty at Calvary.

45.

In his 1.5-year matriculation at Calvary, C.B.'s behaviors did not interfere with classroom instruction or his peers' ability to learn.

46.

Calvary did not attempt to look for solutions or support Ms. Bryant or C.B. Instead, Ms. Bryant was told to immediately withdraw C.B.

47.

In response to this event, Ms. Bryant immediately increased C.B.'s therapeutic support services.

48.

In December 2020, Ms. Bryant is notified of 'behavior problems' when C.B. quietly plays with a paperclip during class instruction.

49.

Despite knowledge that manipulatives, including paperclips, help C.B. manage his ADHD, C.B. still gets in trouble.

50.

Calvary School applies the disciplinary policy more harshly to C.B. than other similarly situated white students in a discriminatory and retaliatory fashion.

51.

Calvary School did not kick out other seventh and eighth grade discovery school white students, C.W. and B.J., with learning disabilities for manifestations related to said disabilities in the 2019 and 2020 academic years.

52.

Calvary denied C.B. the opportunity to participate in the after-school activity, soccer.  C.B. tried out, but never received a response on whether he made the team.

53.

Upon information and belief, other white students received notifications of their team status.

54.

In December 2020, Calvary School and Ms. Bryant have a meeting to discuss supportive services for C.B.

55.

Calvary did not allow Ms. Bryant an opportunity to fully investigate and trouble-shoot the root causes of his disability-based behavioral manifestations—some of which were related to racially discriminatory remarks in the classroom.

56.

At her own expense, Ms. Bryant procured de-escalation training for Calvary School teachers via Ready to Learn staff.

57.

Calvary School declined Ms. Bryant's request for reasonable accommodations. Instead, Calvary School told Ms. Bryant to find another school.

58.

In February 2021, Ms. Bryant took on the expense of having C.B. evaluated to establish additional support services for C.B. and his teachers.

59.

Ready to Learn ABA LLC evaluated C.B. and provided detailed recommendations and assessments as part of a 33-page behavioral intervention plan.

60.

Ms. Bryant provided Defendant with a copy of the behavioral intervention plan.

61.

With new supports in mind, Ms. Bryant requested that C.B. be allowed to return to the classroom.

62.

In lieu of providing reasonable accommodations, Calvary School pushed C.B. out of the school—prohibiting him from returning to the school location until an indeterminate and subjective level of progress was achieved.

63.

Although a return to school would help to foster and promote C.B.'s overall social and academic success, Ms. Bryant's request was denied based upon "the seriousness of his [C.B.'s] behavior record."

64.

Calvary's Headmaster, Jim Koan, noted that the December 8, 2020 reentry plan was contingent upon "complete withdrawal from CRC" and that "CRC is not working for C.B."

65.

C.B.'s minimal behavioral record without injury to himself or others does not rise to the level of "demonstrated persistent or significant discipline problems."

66.

Notably, Ms. Bryant witnessed that the lack of tolerance exhibited for black boys is not present for similarly situated white children at Calvary School.

67.

Because of Calvary School's actions, C.B. was denied access to the school vis-à-vis his dismissal, denied the opportunity to participate in small group with his similarly situated peers without disabilities, and denied the opportunity to

participate in school with his similarly situated white peers—all benefits C.B. was entitled to receive as a student at Calvary School.

68.

In addition to psychological trauma, Ms. Bryant has suffered pecuniary damages for tuition and associated costs of alternative schooling.

69.

Ms. Bryant was financially responsible for paying tuition at a school that prohibited C.B.'s attendance therein.

70.

Calvary School purposefully and intentionally failed to provide reasonable accommodations to ensure non-discriminatory access to the classroom for C.B.

71.

According to the expertise of Ready to Learn ABA LLC, the recommended behavioral interventions and accommodations would have provided C.B. with access and opportunity to perform in the classroom.

72.

Notably, Ms. Bryant noticed behavioral improvement after implementing the recommendations in the home.

73.

C.B. was dismissed from Calvary because of pervasive disability and racial discrimination on or about March 2021.

74.

Calvary School was reckless and callously indifferent to the federally protected rights of C.B.

## COUNT I: RACIAL DISCRIMINATION IN CONTRAVENTION OF TITLE VI

75.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

76.

C.B.'s identification as a black boy is a protected basis under the statute.

77.

Calvary School is a recipient of federal funds.

78.

As the Headmaster, Mr. Koan was empowered to institute changes within Calvary School including but not limited to transferring C.B. to another instructor, investigating complaints of racial discrimination, allowing C.B. to return to the

classroom with additional interventions, and others to ensure a non-discriminatory learning environment.

79.

As the Program Director, Ms. Jones was empowered to institute changes including but not limited to transferring C.B. to another instructor, investigating complaints of racial discrimination, allowing C.B. to return to the classroom with additional interventions, and others to ensure a non-discriminatory learning environment.

80.

Calvary School, by and through its teachers and administrators, acted with deliberate indifference to known acts of discrimination in school by ignoring Ms. Bryant's verbal and written complaints of a racially hostile learning environment including repeated encouragement for medication, refusal for reasonable accommodations rooted in racial animus, and dismissal of the program for discriminatory reasons.

81.

Calvary School, by and through its administrators, intentionally created and acquiesced in the racially discriminatory environment when they ignored Ms. Bryant's racial discrimination complaints.

82.

All a result of the unlawful actions of the Calvary School, C.B. has suffered loss of opportunity, pecuniary expenses including tuition, emotional pain, suffering, mental anguish, and other non-pecuniary losses.

83.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendants violated C.B.'s Title VI rights by subjecting him to a racially hostile learning environment.

## COUNT II: RACIAL DISCRIMINATION IN CONTRAVENTION OF SECTION 1981

84.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

85.

Calvary School and Ms. Bryant, on behalf of C.B., entered into a valid, enforceable contract for educational services.

86.

In exchange for payment of the requisite tuition and fees, Calvary School agreed to make educational services via lecture, class participation in the Discovery School Program, and extracurricular activities available to C.B. on a non-discriminatory basis.

87.

In exchange for payment of the requisite tuition and fees, Calvary School agreed to provide C.B., by and through his mother, the opportunity to participate in the tiered disciplinary process, pursuant to Calvary School's academic handbook but Calvary failed to follow said process.

88.

Calvary School denied C.B. the same right to make and enforce contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of his race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

89.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Calvary School violated C.B.'s Section 1981 rights by subjecting him to a racially hostile learning environment.

## COUNT III: DISABILITY DISCRIMINATION IN CONTRAVENTION OF SECTION 504 OF THE REHABILITATION ACT

90.

All of the foregoing allegations are repeated and realleged as though fully set forth herein.

91.

Calvary School is a recipient of federal funds.

92.

Calvary School is a 'program or activity' as defined in 29 U.S. Code § 794(b)(3)(A)(ii) because it is primarily engaged in the business of providing educational services to students.

93.

C.B.'s diagnosis on the Autism Spectrum and ADHD diagnosis are qualifying disabilities under 29 U.S. Code § 794.

94.

C.B.'s disabilities substantially limit one or more major life activities including his ability to learn, read, concentrate, think, and communicate.

95.

Ms. Bryant's requests for reasonable accommodations—to allow a complimentary behavioral aide to assist C.B. in the classroom, a request for additional instruction in the virtual learning environment, requests for adjustments to the disciplinary policy in the student handbook, and requests to return to in-person learning without medicinal intervention were accommodations in furtherance of needed behavioral supports for C.B.'s disabilities.  Ms. Bryant's requests did not that fundamentally alter the nature of Calvary School's Discovery program.

96.

C.B. was a qualified student because he met all requirements for admission in 2019, met all requirements for matriculation to the next grade level in the subsequent 2020-2021 academic year, and met satisfactory academic progress by obtaining a mostly A and B average for his tenure.

97.

As the Headmaster, Mr. Koan was empowered to institute changes within Calvary School including but not limited to transferring C.B. to another instructor, providing reasonable accommodations, allowing C.B. to return to the classroom with additional interventions, and others to ensure a non-discriminatory learning environment.

98.

As the Program Director, Ms. Jones was empowered to institute changes including but not limited to transferring C.B. to another instructor, providing reasonable accommodations, allowing C.B. to return to the classroom with additional interventions, and others to ensure a non-discriminatory learning environment.

99.

Calvary School, by and through its teachers and administrators, acted with deliberate indifference to known acts of discrimination in school by ignoring Ms. Bryant's verbal and written requests for reasonable accommodations, repeatedly encouraging Ms. Bryant to medicate C.B., and dismissing C.B. from the school for behavioral manifestations of his disability.

100.

Calvary School, by and through its administrators and teachers, intentionally created and acquiesced in the disability-based discriminatory environment when they ignored Ms. Bryant's requests for reasonable accommodations.

101.

All a result of the unlawful actions of the Calvary School, C.B. has suffered loss of opportunity, pecuniary expenses including tuition, emotional pain, suffering, mental anguish, and other non-pecuniary losses.

102.

Based on all the facts incorporated to support this Count, Plaintiff has demonstrated that Defendant violated C.B.'s Section 504 rights by subjecting him to a disability-based discriminatory learning environment.


**ATTORNEY'S FEES**

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees against all Defendants under 42 U.S.C. § 1988(b), 42 U.S.C. § 2000d, 29 U.S. Code § 794(a), and all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a) That process issue and service be had on Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiff be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiff have judgment against Defendant for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiff; and

f) That Plaintiff receives such other and further relief as this Court deems just and proper.

DATE: November 16, 2021

Respectfully submitted,

Angelik Edmonds
Attorney for C.B., by and through Ms. Jaketra Bryant
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE

Suite V-17 Atlanta, Georgia 30312
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com