UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JAKETRA BRYANT, on behalf of her
minor child C.B.,

      Plaintiff,

v.

CALVARY CHRISTIAN SCHOOL OF
COLUMBUS, GEORGIA, INC.,

      Defendant.

Civil Action File No. 4:21-cv-205-CDL

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND SUPPORTING MEMORANDUM OF LAW**

Under Federal Rule of Civil Procedure 12(c), Defendant Calvary Christian School of Columbus, Georgia, Inc. ("Calvary") moves for judgment on the pleadings, based on Plaintiff's failure to state a claim for relief.

## I.      INTRODUCTION

Plaintiff enrolled her son, C.B., at Calvary, a private school with high behavior standards. After C.B. exhibited numerous behavioral problems, he was asked to leave due to Calvary's disciplinary policy. Plaintiff now contends that Calvary discriminated against C.B. because of his disabilities and race. But the mere fact that Calvary took disciplinary action against a student with protected traits does not suggest that it did so for an unlawful discriminatory reason. Because Plaintiff pleads no factual allegations supporting her conclusory accusations of unlawful discrimination, this Court should dismiss this action.

## II.      PERTINENT ALLEGATIONS IN THE COMPLAINT

Plaintiff is the mother of C.B. [Doc. 1 ¶ 1.] She and C.B. are African-American. [*Id.* ¶¶ 1-2.] C.B. has Autism Spectrum Disorder and Attention Deficit Hyperactivity Disorder, which can

manifest in elopement, distracted or delayed concentration, and the need to utilize manipulatives to occupy his hands during instruction. [*Id.* ¶ 12.]

In the 2019-20 and 2020-21 school years, C.B. enrolled at Calvary as a ninth grader. [*Id.* ¶ 2.] During his enrollment, C.B. had at least four "incidents of misbehavior related to his disability." [*Id.* ¶ 43.] Plaintiff alleges that she met with Calvary to discuss "reasonable accommodations" for C.B. [*Id.* ¶ 16.] Plaintiff contends that, in October 2019, Calvary "received notice of C.B.'s need for additional reasonable accommodations in [a] report from Dr. Weiss." [*Id.* ¶ 18.] In April 2020, after Calvary transitioned to a virtual learning model because of the COVID-19 pandemic, Plaintiff "requested reasonable accommodations for C.B. in the virtual setting, but" Calvary told her "that virtual learning is the parent's responsibility." [*Id.* ¶¶ 24-25.] Plaintiff contends that Calvary "denied C.B. reasonable accommodations for specific instruction-based learning." [*Id.* ¶ 26.]

Calvary eventually dismissed C.B. because of his behavioral problems. [*Id.* ¶ 57.] According to Plaintiff, Calvary's 2020-21 Student Handbook Expulsion/Dismissal Policy "requires that a student exhibit 'persistent or significant discipline problems' to be eligible for expulsion or dismissal from the school." [*Id.* ¶ 13.] Plaintiff does not think C.B.'s disciplinary record met that standard. [*Id.* ¶ 65.] The Handbook actually states:

> ***At the discretion of the Administration***, a student who has demonstrated persistent ***or*** significant discipline problems and ***has not adequately responded to school guidance or correction***, may be expelled or asked to withdraw. A student who is dismissed from [Calvary] will not be considered for re-enrollment for a period of one year from the date of departure.

(Handbook, attached as **Ex. 1**, at 16 (emphasis added).)

In February 2021, Plaintiff had C.B. evaluated, resulting in a 33-page behavior intervention plan ("BIP") [*Id.* ¶ 58.] Plaintiff provided that BIP to Calvary and asked if he could return, but

Calvary prohibited his return "until an indeterminate and subjective level of progress was achieved." [*Id.* ¶¶ 60-62.]

Plaintiff alleges that Calvary applied its disciplinary policy more harshly to C.B. than other similarly situated white students. [*Id.* at 2-3, ¶ 50.] Plaintiff alleges that Calvary "did not kick out" two white students "with learning disabilities for manifestations related to said disabilities in the 2019 and 2020 academic years." [*Id.* ¶ 51.] Plaintiff also alleges that he did not make the after-school soccer team, but that other white students did. [*Id.* ¶¶ 52-53.] Plaintiff also alleges that two other black students withdrew from Calvary after the 2020-21 school years "after dealing with a racially discriminatory learning environment" in C.B.'s classroom. [*Id.* ¶¶ 21-22.]

Plaintiff asserts three claims against Calvary: (1) a hostile educational environment claim under Title VI (Count I); (2) a disparate treatment claim under 42 U.S.C. § 1981 (Count II); and (3) disparate treatment and failure-to-accommodate claims under Section 504 of the Rehabilitation Act of 1973 (Count III).

### III.   MEMORANDUM OF LAW

Under Rule 12(c),[1] this Court should enter judgment for Calvary on all of Plaintiff's claims. Plaintiff's Section 504 claim fails because (i) C.B. was not a qualified individual, (ii) C.B. was not

---

[1] The standard for dismissal under Rule 12(c) is essentially the same as under Rule 12(b)(6). *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 n.2 (11th Cir. 2011). The primary difference is that the defendant files a 12(b)(6) motion before answering and a 12(c) motion after the pleadings are closed but early enough not to delay trial. *Butler v. DeKalb Cnty. Sch. Dist.*, No. 1:14-cv-1768-WSD, 2015 WL 4598292, *2 (N.D. Ga. July 29, 2015).
Under Rule 12(b)(6), a complaint is subject to dismissal if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To satisfy this "plausibility" standard, the complaint's allegations must show "more than the sheer possibility that the defendant has acted unlawfully." *Id.* Hence, factual allegations that are "merely consistent" with a defendant's liability "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

treated less favorably, and (iii) Calvary did not fail to accommodate his disabilities. Her § 1981 claim fails because she has not plausibly alleged racially discriminatory intent or impairment of any contractual right. Her hostile educational environment claims under Title VI (and all other statutes) fail because she has not pled the elements of such a claim. And she may not recover damages for non-economic injuries under Title VI or Section 504.

**A.    Plaintiff has not pled a viable disparate treatment or failure-to-accommodate claim under Section 504 (Count III).**

Section 504 prohibits disability-based discrimination in the provision of public services. *J.S., III et al. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). The statute provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. If private schools receive federal financial assistance, they are generally subject to the Rehabilitation Act's provisions. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016).

---

When considering a motion to dismiss for failure to state a claim, the court must accept all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff. *BioHealth Med. Lab., Inc. v. Cigna Health and Life Ins. Co.*, 706 F. App'x 521, 523 (11th Cir. 2017). The court need not, however, accept the truth of "legal conclusion[s] couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The court should assume the veracity of all well-pled factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  In doing so, the court may consider some matters outside the four corners of the complaint, including (1) documents incorporated by reference into the complaint, (2) facts subject to judicial notice, and (3) documents that are both "central to the complaint" and have unquestioned authenticity. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *Basson v. Mortg. Electronic Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018). The Eleventh Circuit has "held that a document is central to a complaint when it is a 'necessary part of [the plaintiff's] efforts to make out a claim.'" *Basson*, 741 F. App'x at 771 (quoting *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1054 n.12 (11th Cir. 2015).

To state a claim for disability discrimination under Section 504, the plaintiff must establish that: (1) "he is a qualified individual with a disability;" (2) "he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activity, or was otherwise discriminated against by the public entity; and (3) "the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Id.* (internal marks omitted). *J.S.*, 877 F.3d at 985. Under Section 504, the Eleventh Circuit recognizes theories of discrimination based on disparate treatment and the failure to reasonably accommodate a disability. *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

Plaintiff cannot prevail under either theory. As an initial matter, he cannot show that he was a qualified individual, given his significant behavioral problems. Next, putting aside his lack of qualification to continue attending Calvary, he has not plausibly alleged that Calvary took any action against him because of his disability. Lastly, he has not plausibly alleged that Calvary failed to reasonably accommodate his disability.

### i.      C.B. was not a "qualified individual," because of his behavioral problems.

Regarding the first element of a disability discrimination claim, a plaintiff is "otherwise qualified" only if he "is able to meet all of the program's requirements in spite of his" disability. *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016). Plaintiff has not pled this element. At most, she alleges that C.B. was "qualified" based on his academic progress. [Doc. 1 ¶ 96.] But that allegation misses the mark. Calvary is a private educational institution with a strict disciplinary policy, and it was C.B.'s significant behavioral problems—not his grades—that rendered him unqualified to continue attending Calvary. Because Plaintiff pleads no facts showing that C.B. could meet all of Calvary's disciplinary requirements in spite of his disability, he has not plausibly alleged that he was "otherwise qualified" under the Rehabilitation Act.

### ii.     Plaintiff has not plausibly alleged disparate treatment.

"In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of her disability." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 782 (11th Cir. 2018). Section 504 only requires "evenhanded treatment and the opportunity for [disabled] individuals to participate in and benefit from programs receiving federal assistance." *Medina v. City of Cape Coral, Fla.*, 72 F. Supp. 3d 1274, 1279 (M.D. Fla. 2014). It does not guarantee persons with disabilities "equal results." *Id.* Thus, to show disparate treatment in the education context, it is not enough merely to show that the school district denied the student a free appropriate public education as required under special education laws. *J.S.*, 877 F.3d at 985. Rather, the plaintiff must prove he "was treated differently or excluded from something that other students received." *Id.*; *see Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1222 (11th Cir. 2019) ("[D]iscrimination consists of treating *like* cases differently."). The defendant must have "singled out [the disabled student] for disadvantage because of his disability." *L.E. v. Ragsdale*, 568 F. Supp. 3d 1364, 1368 (N.D. Ga. 2021).

Accordingly, a disabled student cannot show disparate treatment based on a school's facially neutral policy. *See L.E.*, 568 F. Supp. 3d at 1368. For instance, in *L.E. v. Ragsdale*, a group of parents sued a school district on behalf of their disabled students, claiming that the district's COVID-19 mask-optional policy unfairly deterred them from attending school in person. *Id.* But because the district's mask-optional policy applied to both disabled and non-disabled students alike, it was facially neutral and could not support a disparate treatment claim. *Id.*

Plaintiff's disparate treatment claim fails because she has not alleged facts showing that Calvary treated C.B. less favorably than his similarly situated, non-disabled peers. The disciplinary policy at issue is facially neutral, applying to both disabled and non-disabled students alike. (*See* Handbook at 16.) If Calvary's administration determines that "a student . . . has demonstrated a

persistent or significant discipline problems and has not adequately responded to school guidance or correction," he is subject to dismissal. (*Id.*) Because that policy applies to all Calvary students, regardless of whether they are disabled, it does not, in and of itself, evince any disparate treatment. *See L.E.*, 568 F. Supp. 3d at 1368.

And Plaintiff has not pled any facts showing that Calvary applied that facially neutral disciplinary policy in a discriminatory manner. Plaintiff acknowledges that Calvary prohibited C.B. from returning because of the seriousness of his disciplinary record. [Doc. 1 § 63.] Plaintiff does not provide any details about the four behavioral incidents that led to C.B.'s expulsion. [*See generally id.* ¶¶ 43.] Nor does she identify any non-disabled student who had a similar behavioral history who received more favorable treatment. [*See generally id.* ¶¶ 50-51.] Consequently, she has not pled any facts suggesting that Calvary treated C.B. worse under the disciplinary policy than any of his non-disabled peers.

Plaintiff's mere dissatisfaction with the disciplinary outcome, coupled with C.B.'s disabled status, are not sufficient to support a disparate treatment claim under Section 504.

### iii.   Plaintiff's failure-to-accommodate claim fails because she has not plausibly alleged that Calvary failed to make "minor adjustments" to accommodate C.B.'s disabilities.

Plaintiff has also not pled a viable failure-to-accommodate claim, because Calvary, as a private school, was only required to make "minor adjustments" to accommodate his disabilities—not provide the full gamut of special education services required of public school systems. To prevail on a failure-to-accommodate claim, a plaintiff must show that: "(1) she is a qualified individual with a disability; (2) she is unable, because of her disability to meaningfully access a public benefit to which she is entitled; and (3) the public entity failed, despite her request, to provide a reasonable accommodation for her disability." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1328 (N.D. Ga. 2017).

Under the Rehabilitation Act's regulatory scheme, public school districts and private schools have different obligations in accommodating a student's disabilities. Under 34 C.F.R. § 104.33(a), only funding recipients "that operate[] . . . ___*public*___ elementary or secondary education program[s] or activit[ies]" must "provide a free appropriate public education" ("FAPE") to their students with disabilities, "regardless of the nature of the severity of" those disabilities. 34 C.F.R. § 104.33(a) (emphasis added). This FAPE mandate requires public school systems to provide "regular or special education and related aids and services that (i) designed to meet individual educational needs of handicapped persons as adequately as nonhandicapped persons are met and (ii) are based upon adherence to" various procedural requirements. 34 C.F.R. § 104.33(b)(1). This might require the public school to implement an individualized education program ("IEP") for the student. 34 C.F.R. § 104.33(b)(2).

Under this standard, a school must only provide a reasonable accommodation—not the plaintiff's requested or preferred accommodation. *Redding v. Nova Se. Univ., Inc*., 165 F. Supp. 3d 1274, 1296-97 (S.D. Fla. 2016) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285-86 (11th Cir. 1997). Nor must the school provide "the maximum…or every conceivable accommodation possible." *Alabi v. Atlanta Pub. Schs*., No. 1:12-CV-0191-AT, 2011 WL 11785485, *8 (N.D. Ga. Sept. 26, 2011). Schools need only provide "those accommodations that are necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue." *Todd*, 236 F. Supp. 3d at 1311; *Redding*, 165 F. Supp. 3d at 1299. "Meaningful access does not mean equal access or preferential treatment." *Todd*, 236 F. Supp. 3d at 1334 (cleaned up).

The regulatory requirements for private schools are less demanding. Under 34 C.F.R. § 104.39(a), a funding "recipient that provides private elementary or secondary education may not, on the basis of handicap, exclude a qualified handicapped person if the person can, ___*with minor*___

**_adjustments_**, be provided an appropriate education, as defined in § 104.33(b)(1), within that recipient's program or activity." 34 C.F.R. § 104.39(a) (emphasis added). Notably, unlike the FAPE regulation applicable to public schools, § 104.39 makes no reference to IEPs. *Compare* 34 C.F.R. § 104.33(b)(2) *with* 34 C.F.R. § 104.39. Hence, though a public school system's FAPE obligation might require it to accommodate a student's disabilities with a full gamut of special education services under the student's IEP, a private school's FAPE obligation only requires it to make "minor adjustments" to accommodate the student. *Compare* 34 C.F.R. § 104.33(b) *with* 34 C.F.R. § 104.39(a).

Though the Rehabilitation Act's regulations do not define "minor adjustments," it is clear that they require something less than what is required of public school systems in making "reasonable accommodations." *Hunt v. St. Peter Sch.*, 963 F.Supp. 843, 852 (W.D. Mo. 1997). "Minor indicates a minimal burden and adjustment implies a small correction." *Id.* Hence, on its face, Section 504 "does not compel private education institutions to 'disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate.'" *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 173 (2d Cir. 2001) (quoting *Se. Community Coll. v. Davis*, 442 U.S. 397, 405 (1979)). Unlike with public school systems, Section 504 does not require private schools to provide FAPE "regardless of the nature of the severity of" the student's disabilities. *Compare* 34 C.F.R. § 104.39(a) *with* 34 C.F.R. § 104.33(a).

For instance, in *St. Johnsbury Academy v. D.H.*, the Second Circuit reversed a trial court's finding that a private academy's fifth-grade-level entrance requirement discriminated against disabled students who could not meet that threshold. 240 F.3d at 174. The court held that this entrance requirement was facially nondiscriminatory and promoted a "legitimate academic policy" of the institution. *Id.* Though the plaintiff claimed that the fifth-grade requirement "set[] the bar too high[,]"

. . . nothing in the Rehabilitation Act require[d]" the private school "to lower its academic standards."
*Id.* (citing *Davis*, 442 U.S. at 413 n.12).

Plaintiff's accommodation claim fails because she relies on conclusory allegations that
Calvary "failed to provide reasonable accommodations. . . ." [*See, e.g.*, Doc. 1 ¶ 70.] As a private
school, Calvary did not have to provide the same sorts of accommodations that public school systems
might have to provide. *See* 34 C.F.R. § 104.39(a). As a private school, Calvary only had to make
"minor adjustments" to its programs and activities as a means of accommodating C.B.'s disabilities—
a lesser standard than what the Rehabilitation Act requires of public school systems. *See Hunt*, 963
F.Supp. at 852.

Though the Rehabilitation Act contemplates that public school systems may need to
accommodate a student's disability in the context of his IEP, there is no such provision for private
schools. *Compare* 34 C.F.R. § 104.33(b)(2) *with* 34 C.F.R. § 104.39. Thus, the Rehabilitation Act did
not require Calvary to address C.B.'s behavior problems through a behavior intervention plan, much
less one submitted by Plaintiff. [*See* Doc. 1 ¶ 70-71.] After all, even if Calvary were a public school,
Plaintiff still would not be entitled to her requested or preferred accommodation. *See Redding*, 165
F. Supp. 3d at 1299.

In contending that Calvary should readmit her son, Plaintiff simply asks for special treatment
under Calvary's disciplinary policy. *See Todd*, 236 F. Supp. 3d at 1334. Calvary dismissed C.B.
because of his significant disciplinary history. [Doc. 1 ¶¶ 42-43.] That disciplinary policy serves a
legitimate academic purpose. Though Plaintiff contends that her son should be allowed to return, the
Rehabilitation Act does not require Calvary, a private institution, to lower its behavior standards.
Though public school systems might be required to educate C.B. no matter how severe his disability-
related misbehavior is, Calvary is not, because it is a private institution. *Compare* 34 C.F.R.
§ 104.39(a) *with* 34 C.F.R. § 104.33(a).

The mere fact that Calvary did not accede to all of Plaintiff's demands regarding how to address her son's significant behavioral problems does not in any way suggest that Calvary failed to implement minor adjustments to accommodate his alleged disabilities. Accordingly, Plaintiff has failed to state a claim for failure-to-accommodate, and this Court should dismiss that theory.

**B.      Plaintiff has not pled a viable race discrimination claim under § 1981 (Count II).**

Plaintiff has not pled a viable § 1981 claim, because she has not plausibly alleged that Calvary impaired any of her contractual rights based on discriminatory motive. Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting 42 U.S.C. § 1981(a)). The statute "defines 'make and enforce contracts' to 'include[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at 475 (quoting 42 U.S.C. § 1981(a)). Private, non-sectarian schools are generally subject to this prohibition. *Runyon v. McCray*, 427 U.S. 160, 172-73 (1976).

To state a claim for racial discrimination under § 1981, the plaintiff must allege facts showing three essential elements: "(1) that she is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Moore v. Grady Mem. Hosp. Corp.*, 834 F.3d 1168, 1171-72 (11th Cir. 2016). Because Plaintiff has adequately alleged that C.B. and his mother both are members of a racial minority, Calvary focuses on the second and third elements.

**i.      Plaintiff did not plausibly allege racially discriminatory intent.**

To satisfy the second element, the plaintiff must allege enough facts to suggest intentional race discrimination. *Ingram v. Buford City Sch. Dist.*, No. 1:18-CV-03103-ELR-WEJ, 2018 WL 7079179, *7 (N.D. Ga. Dec. 17, 2008). The elements of a prima facie case under the *McDonnell Douglas* burden-shifting framework are potentially relevant, but the plaintiff does not necessarily

have to make a prima facie case at the pleading stage. *Id.* Nevertheless, conclusory allegations of racially discriminatory motives are not sufficient. *Langford v. Magnolia Advanced Materials, Inc.*, 861 F. App'x 383, 387 (11th Cir. 2021) (Plaintiff's "complaint also failed to state a claim under § 1981 because he asserted only conclusory allegations of animus and the races of the parties in order to alleged racially discriminatory motives.").

Rather, to show discriminatory motive, plaintiffs may rely on three types of evidence: (1) direct; (2) circumstantial; or (3) statistical. *Standard v. A.B.E.L. Servs., Inc.*, 1671 F.3d 1318, 1330 (11th Cir. 1998), abrogated on other grounds, as recognized by *Thomas v. Esterle*, No. 21-10638, 2022 WL 2441562, *1 (11th Cir. July 5, 2022). Plaintiff has not pled facts that could make any such evidentiary showing.

### a.    There is no direct evidence of discriminatory motive.

"Direct evidence is evidence that establishes the existences of discriminatory intent behind the . . . decision without any inference or presumption." *Id.* Here, Plaintiff makes no allegations of direct evidence of racially discriminatory animus, such as a racist statement attributed to a key decisionmaker. Plaintiff instead appears to be attempting to making a case based on circumstantial or statistical evidence. As discussed below, however, she also falls far short of her pleading burden under those evidentiary theories.

### b.    Plaintiff does not plausibly allege a circumstantial case.

When relying on circumstantial evidence, the plaintiff generally must plead facts showing that similarly situated comparators outside his protected class was treated more favorably. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1273 (11th Cir. 2004) ("[T]he wholly unsupported charge that the BellSouth defendants acted differently in cases not involving minority plaintiffs, even if it were supported by some specific facts or examples is not sufficient to state a claim for racially motivated discrimination."); *Boggess v. Sch. Bd. of Sarasota Cnty.*, No. 8:06-cv-2245-T-33EAJ,

2008 WL 11440597, *4 (M.D. Fla. Sept. 18, 2008) (Plaintiff's "complaint references no other cases where minority teachers were treated more favorably than Caucasian employees, let alone a case involving a similarly situated employee. Because she fails to offer any comparators at all, Plaintiff cannot establish a violation of Section 1981. . . .").

To be valid, the proffered comparator must be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). Ordinarily, this means that the comparator "engaged in the same basic conduct or misconduct as the plaintiff," was "subject to the same . . . policy, guidelines, or rule as the plaintiff," was "under the jurisdiction of the same supervisor" or decisionmaker as the plaintiff, and "share[d] the plaintiff's . . . disciplinary history." *Oriya v. Auburn Univ.*, 831 F. App'x 462, 464 (11th Cir. 2020). In other words, "[a] valid comparison turns not on formal labels, but rather on substantive likeness." *Id.* (internal quotation marks omitted).

For instance, in *Uppal v. Hospital Corp. of America*, the Eleventh Circuit held that a plaintiff failed to plausibly allege discriminatory intent based on "the repeated allegations that 'other similarly situated employees outside Plaintiff's protected class' engaged in similar misconduct but were not disciplined." 482 F. App'x 394, 396 (11th Cir. 2012). To cross the line from mere possibility to plausibility, the plaintiff needed additional factual context showing, among other things, how the employees were "similarly situated." *Id.*

Plaintiff's Complaint likewise fails to plausibly allege a similarly situated, non-African-American comparator who was treated more favorably than Plaintiff. At most, Plaintiff alleges that Calvary "did not kick out" two white students "with learning disabilities for manifestations related to said disabilities in the 2019 and 2020 academic years" and that he did not make the soccer team like other white students did. [*Id.* ¶¶ 51-53.] But Plaintiff does not clarify what C.B.'s or the white students' disciplinary history consisted of. [*See generally id.*] Nor does she allege

facts showing that C.B.'s athletic prowess, sportsmanship, or other material attributes were comparable to the unidentified white students who made the soccer team. [*See generally id.*]

In short, Plaintiff has not provided the Court with enough factual context to enable it to assess whether the white students referenced in his Complaint were similarly situated to C.B. in all material respects. Consequently, her conclusory allegations of discriminatory treatment never cross the line from mere possibility to *plausibility*. In the absence of such circumstantial facts, she has not plausibly alleged discriminatory motive based on a comparator theory. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.2002) ("[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal.")

### c.   Plaintiff does not allege statistical evidence of discriminatory motive.

Similarly, when relying on statistical evidence, conclusory allegations of a statistical disparity are not sufficient. *Pouyeh v. Bascom Palmer Eye Institute*, 613 F. App'x 802, 811 (11th Cir. 2015). For instance, in *Pouyeh v. Bascom Palmer Eye Institute*, the Eleventh Circuit held that a plaintiff failed to plausibly allege disparate impact based on his allegation that another "immigrant Iranian doctor . . . had applied and not obtained a residency position. . . ." *Id.* Because the complaint provided no "information about that individual's background," it gave "no insight into statistical information." *Id.* Any inference of discrimination based on those facts would be too speculative to warrant relief. *Id.*; *see also Kidd v. City of Jasper*, No. 6:17-cv-1180-TMP, 2018 WL 2766058, *7 (N.D. Ala. June 8, 2008) ("There is no factual allegation it the complaint that provides information regarding what duties the plaintiffs performed, what full-time permanent job the plaintiff alleges he was terminated from, or what job the white employees were hired to fille. The court is not inclined to make the lead that persons hired as full-time employees to accounting positions, for example, are 'similar' to persons working in full-time positions as truck drivers.").

-14-

Plaintiff's complaint likewise fails to allege any statistical disparity suggesting racially discriminatory motive. Plaintiff identifies two other African-American students who withdrew, but she provides no factual context about those students or the circumstances surrounding their withdrawals. [Doc. 1 ¶¶ 21-22.] In the absence of such factual context, her allegations about those two former students provide no statistical insight. *See Pouyeh*, 613 F. App'x at 811. Consequently, Plaintiff has not pled a case for discriminatory motive based on a statistical showing.

### ii.    Plaintiff has not pled contract impairment.

With respect to the third element of a § 1981 claim, the plaintiff "must initially identify an impaired contractual relationship . . . under which the plaintiff has rights." *Moore*, 834 F.3d at 1172. (internal quotation marks omitted). In determining whether the plaintiff has satisfied this pleading burden, courts look to the underlying substantive state law governing the contract at issue. *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010). Where Georgia law applies, courts will not infer the existence of an implied contract if it runs counter to Georgia policy. *See id.* ("Interpreting the bylaws governing staff privileges as a contract 'would run counter to Georgia's policy of allowing the hospital to grant or withhold staff privileges from doctors it believes are unqualified to serve on its staff." (cleaned up).).

Georgia law recognizes a contractual relationship between a private school and the student/student's parent(s). *Blaine v. Savannah County Day Sch.*, 228 Ga. App. 224, 226 (1997). The student attends the private school "voluntarily, by mutual agreement, governed by the standards for grades, for deportment, and for conduct, which standards are established and enforced by the scholastic institution in order to foster scholastic achievement and preparation for further advanced education. . . ." *Id.* at 225. Georgia courts look to school policies, handbooks, and manuals in defining the precise contours of that contractual relationship. *See Pryor v. CCEC,*

*Inc.*, 257 Ga. App. 450, 452 (2002) (examining school's disciplinary policies regarding plaintiff's theory that school breached contract by expelling student).

Generally, "[i]n consideration of the educational opportunities provided by" the school, the student/parent agree "to impliedly do four things essential to the school-student relationship: (1) to diligently seek to learn and perform as a good student and to earn grades as a result of personal academic merit; (2) to be honest and responsible, i.e., not lie or cheat in the educational endeavor of learning together with the school staff and other students; (3) to maintain reasonable discipline and self-discipline in the academic setting; and (4) to pay fees, tuition, and expenses." *Blaine*, 228 Ga. App. at 226. With those principles in mind, Georgia courts are highly deferential to school officials' discretion in student disciplinary matters. *Id.* at 226-27.

For instance, *Spell v. Bible Baptist Church, Inc.*, a former student and his parents alleged that a private, religious school breached its contract with them when it expelled the student for drinking at an off-campus party. 166 Ga. App. 22, 22 (1983). The court rejected that argument, reasoning that "[d]rinking alcoholic beverages and immoral conduct were both dismissal offenses under the school's rules and regulations. . . ." *Id.* School officials were within their discretion in imposing expulsion. *Id.*

Here, Plaintiff has not plausibly alleged that Calvary failed to honor its contract with Plaintiff or otherwise performed or enforced its terms in a racially discriminatory manner. In support of her § 1981 claim, Plaintiff hangs her hat on cherry-picked language from Calvary's disciplinary handbook, arguing in a conclusory fashion that C.B.'s four incidents of misbehavior did not constitute "persistent or significant discipline problems" necessary for expulsion. [Doc. 1 ¶¶ 13, 65.] Yet, she never identifies what C.B.'s four incidents of misbehavior consisted of, other than merely alleging he had a "minimal behavioral record without injury to himself or others. . . ." [*Id.* ¶ 65.] Those allegations hardly preclude Calvary from determining, "[a]t the discretion of [its]

Administration," that he had exhibited serious enough misconduct to warrant dismissal. (*See* Handbook at 16.) Nor does it suggest that the pertinent decisionmakers had not determined, based on legitimate, non-discriminatory reasons, that C.B. had "not adequately responded to school guidance or correction. . . ." (*See id.*)

Hence, Plaintiff has not plausibly alleged a breach of the contract or that Calvary enforced its disciplinary policy less harshly against similarly situated, white students. In the absence of such factual allegations, Plaintiff has not plausibly alleged the third element of her § 1981 claim.

**C.    Plaintiff has not pled a viable hostile educational environment claim under Title VI (Count I) or any other statute.**

This Court should dismiss Plaintiff's "hostile educational environment" claim under Title VI[2] and all other statutes, because she has not pled the essential elements of such a claim. When analyzing discrimination claims brought by students against educational institutions, courts in the Eleventh Circuit often look to employment discrimination caselaw for guidance. *See, e.g.*, *Zainulabeddin v. Univ. of S. Fla. Bd. of Trustees*, 749 F. App'x 776, 782 (11th Cir. 2018). To plead a discrimination claim under a theory of hostile educational environment, the plaintiff must allege: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on his protected trait; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of education and create a discriminatory abusive educational environment; and (5) a basis for holding the school liable exists. *Cf. Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244-46 (11th Cir. 2004) (discussing hostile work environment claim under Title VII); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (same).

---

[2] Plaintiff appears to have asserted only a hostile educational environment claim under Title VI. But to the extent she contends that Calvary racially discriminated against C.B. in any other way, such theory of liability would fail for the same reasons as her § 1981 claim.

Under the third element, an actionable hostile educational environment only exists when the classroom "is permeated with discriminatory intimidation, ridicule, and insult" so severe or pervasive that they alter the student's educational conditions and produce an abusive educational environment. *Cf. Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (discussing hostile work environment claim under Title VII). This standard involves an objective inquiry— *i.e.*, what a reasonable person would find to be hostile and abusive. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). In this vein, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of" education. *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (employment). The "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of [education] to implicate Title [VI]" or other antidiscrimination statutes. *Cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (Title VII) (internal quotation marks omitted).

Courts analyze four factors when deciding whether harassment meets the objective standard: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the student's educational performance. *Mendoza*, 195 F.3d at 1246. Considering those factors, Plaintiff has not plausibly alleged that C.B. experienced a hostile educational environment at Calvary.

The first three factors cut squarely against Plaintiff because the alleged harassment described in the Complaint was only infrequent, mild, and verbal in nature. Plaintiff does not allege that any Calvary personnel (or anybody else, for that matter) used racist or ableist slurs toward C.B. [*See generally* Doc. 1.] Nor does she contend that C.B. was subjected to any form of physical intimidation or non-verbal harassment. [*See generally id.*] At most, she alleges that, *during the*

*2020 presidential election cycle*, unidentified students—not teachers or administrators—made comments about "black" and "gays." [3] [*Id.* ¶ 39.]

These alleged statements plainly do not constitute an actionable hostile environment. Though Plaintiff contends they were "racially charged," there is nothing overtly racist about using such language. On the contrary, given that these comments occurred in the run up to the 2020 presidential election, they appear to relate to political issues. The mere fact that a political issue touches on race or sexual orientation does not suggest racial hostility or harassment.

Plaintiff fares no better under the fourth factor. Though she contends that these vague, "racial comments affect[ed] the learning environment for C.B." [*see id.* ¶¶ 40, 42], her own factual allegations prove otherwise. She repeatedly brags of C.B.'s academic performance during his enrollment at Calvary, alleging that C.B. earned mostly As and Bs at Calvary. [*Id.* ¶¶ 28, 96.] There is nothing, then, to suggest that other students' vague, political speech negatively affected his ability to perform his educational duties.

Plaintiff has not alleged anything remotely resembling an actionable, hostile educational environment under Title VI or any other statute she sues under. According, that theory of liability should be dismissed altogether.

**D.     Under Title VI and Section 504, Plaintiff may not recover punitive damages or damages for non-economic injuries, such as emotional distress.**

Even if Plaintiff had plausibly alleged the essential elements of her discrimination claims under Section 504 and Title VI, her claims for punitive damages, emotional distress, and other non-monetary injuries would still be invalid under those statutes. Congress enacted Title VI under the Spending Clause of the U.S. Constitution. *Barnes v. Gorman*, 536 U.S. 181, 185-86 (2002).

---

[3] Plaintiff does not allege that C.B. is gay or that he was somehow targeted because of his sexual orientation. [*See generally* Doc. 1.]

The remedies for Section 504 claim are the same as those available under Title VI's implied right of action. *Id.* at 185.

Because both private causes of action are ultimately rooted in the Spending Clause, the basis for imposing liability for damages under these statutes is essentially contractual in nature. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1570 (2022). In exchange for accepting federal funding under the statute, the funding recipient agrees to be liable for monetary damages only for intentional violations of the statute. *Id.* Given the contractual nature of this arrangement, the funding recipient may only be subjected to liability for the types of monetary remedies that traditionally have been recoverable under a common-law breach-of-contract claim. *Id.* at 1571-72.

Based on these principles, the U.S. Supreme Court has long held that punitive damages are not recoverable under Title VI or Section 504. *Barnes*, 536 U.S. at 189-90. And, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court recently extended that rationale in holding that emotional distress damages are not recoverable under those statutes. *Cummings*, 142 S. Ct. at 1576. In so holding, the Supreme Court explained that emotional distress damages traditionally were not available for a breach-of-contract claim, even though a few minority jurisdictions recognized contractual liability for non-pecuniary losses. *Id.* at 1575-76.

As a result of these binding precedents, under Title VI and Section 504, Plaintiff may not recover punitive damages, emotional distress damages, or any other damages for non-pecuniary damages that are not traditionally available in a breach of contract action. This Court should therefore dismiss those claims.

## IV.   CONCLUSION

For the foregoing reasons, Calvary respectfully requests that this Honorable Court GRANT its Motion for Judgment on the Pleadings, disposing of Plaintiff's claims with prejudice.

Respectfully submitted this 5th day of October, 2022.

> _s/Reagan G. Sauls_
> Reagan G. Sauls
> Georgia Bar No. 311422
> Jeffrey R. Daniel
> Georgia Bar No. 949075
> _Counsel for Defendant_

**PARKER POE ADAMS & BERNSTEIN LLP**
1075 Peachtree Street, Suite 1500
Atlanta, Georgia 30309
Phone: (678) 690-5750
Fax: (404) 869-6972
reagansauls@parkerpoe.com
jeffdaniel@parkerpoe.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 5th day of October, 2022, I electronically filed the DEFENDANT'S

MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM

OF LAW with the Clerk of the Court using the CM/ECF system, which will automatically send e-

mail notification of such filing to the attorneys of record.:

Angelik Edmonds, Esq.
Samantha Adams, Esq.
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE
Suite V-17
Atlanta, GA 30312
angie@aedmondslaw.com
samantha@aedmondslaw.com

*s/Reagan G. Sauls*
Reagan G. Sauls
Georgia Bar No. 311422
Jeffrey R. Daniel
Georgia Bar No. 949075
*Counsel for Defendant*

**PARKER POE ADAMS & BERNSTEIN LLP**
1075 Peachtree Street, Suite 1500
Atlanta, Georgia 30309
Phone: (678) 690-5750
Fax: (404) 869-6972
reagansauls@parkerpoe.com
jeffdaniel@parkerpoe.com